# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DONNA SMITH,           )
                      )
      Plaintiff,      )
                      )
v.                    )    Case No.:  2:17-cv-01373-SGC
                      )
NATIONWIDE MUTUAL    )
INSURANCE COMPANY, et al.,  )
                      )
      Defendants.    )

## MEMORANDUM OPINION

Presently pending are the motions to dismiss for failure to state a claim filed by the defendants, State Farm Mutual Automobile Insurance Company (Doc. 33) and Nationwide General Insurance Company (Doc. 32).  The motions have been fully briefed and are ripe for adjudication.  (*See* Docs. 40, 42, 43).  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 18).  As explained below, the motions are due to be granted in their entirety.

## I.    STANDARD OR REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 8 "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted).

## II.   BACKGROUND

This lawsuit presents a dispute between the plaintiff, Donna Smith, and two insurers following a traffic accident.  The accident occurred on July 30, 2013, as a

third-party, Daniel Voss, was riding his bicycle southbound in the right-hand lane of Smith Road in rural Calhoun County, Alabama.  (Doc. 27 at 4-5).[1]  The plaintiff was driving northbound on Smith Road.  (*Id.* at 5).  The amended complaint alleges the plaintiff, who was speeding and talking on her cell phone, crossed the center line and collided with Voss.  (*Id.*).  Voss was seriously injured and was flown to UAB hospital, where he was diagnosed with fractures to his skull and face, as well as severe and traumatic brain injuries.  (*Id.*).  Voss was comatose for two weeks and hospitalized for a month, spent two weeks receiving inpatient rehabilitation, and has undergone at least four brain surgeries.  (*Id.* at 5-6).  He suffered serious and permanent changes to his brain function and incurred over $725,000 in medical expenses.  (*Id.* at 6).

Nationwide was the plaintiff's insurer; her policy provided $25,000 in liability coverage.  (Doc. 27 at 6).  The plaintiff reported the accident to Nationwide and cooperated with her insurer.  (*Id.*).  State Farm insured Voss's parents; Voss was covered by four State Farm policies, providing a total of $100,000 in uninsured/underinsured motorist coverage.  (*Id.* at 4).  Voss's representatives contacted State Farm in due course and cooperated with Voss's UIM insurer.  (*Id.* at 6).

---

[1]  Voss has filed a related lawsuit arising from the same accident.  *Voss v. State Farm Mutual Auto. Ins. Co.*, No. 17-1465-SGC (N.D. Ala. *removed* Aug. 29, 2017).

Voss's counsel wrote Nationwide in August 2013, informing the plaintiff's liability insurer of Voss's injuries.  (Doc. 27 at 6-7).  In October 2013, Voss's counsel informed Nationwide that Voss was paralyzed on his right side and his medical bills exceeded $460,000; Voss's counsel made a policy limits demand. (*Id.* at 7).  Nationwide promptly responded, offering its $25,000 policy limits to settle all claims against the plaintiff in exchange for a release from further liability against her.  (*Id.*).  Voss's counsel notified State Farm of the plaintiff's underinsured status and Nationwide's tender of the plaintiff's liability policy limits. (*Id.* at 9).

On January 27, 2014, State Farm took an examination under oath ("EUO") of Voss and his parents—its UIM insureds.  (Doc. 27 at 9).  The amended complaint alleges this was State Farm's only investigation into the accident, despite Voss's brain damage and the fact that his parents did not witness the accident. (*Id.*).  On February 6, 2014, State Farm notified Voss—without explaining its rationale—that it would not consent to his settlement with the plaintiff, instead fronting Nationwide's policy limits pursuant to the procedures set out in *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So. 2d 160 (Ala. 1991).  (*Id.*).  The amended complaint alleges State Farm chose to front Nationwide's policy limits without regard to the possibility it could expose the plaintiff to an excess judgment.  (*Id.*).

Following State Farm's decision to front Nationwide's policy limits, Voss's counsel attempted to convince State Farm to reconsider, noting Nationwide had quickly tendered its limits and that evidence at the scene indicated the plaintiff was at fault.  (Doc. 27 at 14).  State Farm refused to change its position and on April 9, 2014, sent a check to Voss for the fronted funds.  (*Id.*).  Soon thereafter, Voss filed a lawsuit against the plaintiff in state court and notified State Farm of the lawsuit.  *Voss v. Smith*, No. 2014-900224 (Calhoun Cty. Cir. Ct. *filed* April 23, 2014) (*see* Doc. 27 at 14-15).  Voss's state court complaint did not name State Farm, and it appears State Farm did not intervene.  (*See* Doc. 27 at 15; *Voss*, No. 2014-900224).  Neither did State Farm pursue its right of subrogation against the plaintiff, investigate whether subrogation was possible, or monitor the state court lawsuit.  (Doc. 27 at 15-16).

Discovery in the state court case revealed: (1) the plaintiff had a history of speeding in the area of the accident; (2) individuals living near the accident site had repeatedly warned the plaintiff about her dangerous driving in the area, including mere weeks before the accident;[2] (3) the plaintiff's version of events leading up to the accident was not defensible; (4) the plaintiff was talking on her cell phone at the time of the accident; and (5) Voss was in his lane at the time the

---

[2] The amended complaint does not specifically allege the truth of her history of speeding or that neighbors had repeatedly warned her about her dangerous driving.  Still, the amended complaint does allege the plaintiff's liability was "clear" and her case was "not defensible."  (Doc. 27 at 16, 17).

plaintiff collided with him.  (Doc. 27 at 15-16).  The state court trial proceeded to a $1,900,000 jury verdict against the plaintiff in favor of Voss.  (*Id.* at 16).

On September 30, 2016—before the deadline for the plaintiff's post-judgment motions or appeal had run—State Farm sent a check to Voss for the remainder of its UIM coverage limits.  (Doc. 27 at 16-17).  On October 10, 2016, Nationwide sent Voss the $25,000 liability limits of the plaintiff's policy.  (*Id.* at 17).  On October 14, 2016, the plaintiff's lawyer—a Nationwide employee—filed post-judgment motions, which were denied; the plaintiff did not appeal.  (*Id.* at 17).  After Nationwide paid its policy limits, the plaintiff was left with a $1,775,000 excess judgment, excluding interest.  (*Id.*).

On August 15, 2017, the plaintiff filed the instant matter against State Farm and Nationwide in this court on the basis of federal diversity jurisdiction.  (Doc. 1).  After the defendants moved to dismiss, the plaintiff filed an amended complaint.  (Doc. 27).  The amended complaint asserts a total of ten claims.  Against State Farm, the amended complaint asserts claims for: (1) negligent failure to settle; (2) wanton failure to settle; (3) bad faith; and (4) abuse of process.  (*Id.* at 3-26).  Against Nationwide, the amended complaint asserts claims for (1) negligent failure to settle; (2) wanton failure to settle; (3) bad faith; and (4) breach of contract.  (*Id.* at 26-29, 32).  Finally, the amended complaint asserts claims for outrage and civil conspiracy against both State Farm and Nationwide.  (*Id.* at 30-32).

The amended complaint contends State Farm failed to conduct a reasonable investigation of the accident, especially in light of the plaintiff's potential exposure. (Doc. 27 at 17-18).  The amended complaint alleges State Farm regularly engages in this conduct in circumstances, like the plaintiff's, where its UIM insured suffers catastrophic injuries and the tortfeasor has minimum limits or limits that are dwarfed by the insured's damages.  (*Id.* at 19-20).  Instead, under the guise of protecting subrogation rights it rarely or never pursues, the amended complaint alleges State Farm: (1) refuses to consent to its insureds' settlements with tortfeasors; (2) denies its insureds' UIM claims without investigation or evaluation; (3) fronts the tortfeasors' limits; (4) opts-out or chooses not to intervene in the ensuing litigation over liability; and (5) blindly waits for a verdict.  (*Id.* at 20-21).

The amended complaint asserts financial motives drove State Farm's intentional failure to investigate and fairly evaluate the accident.  (Doc. 27 at 21-22).  These motives—which apply to both the decision to decline consent to Voss's settlement with the plaintiff and the refusal to promptly pay or settle Voss's UIM claim—include: (1) avoiding the cost of investigation and litigation; (2) collecting investment income on UIM proceeds rightfully belonging to the Voss; (3) pressuring Voss to settle his UIM claims for less than policy limits by forcing him to try his case against the plaintiff; (4) maintaining artificially low reserves; and (5) hoping it got lucky with a defense verdict.  (*Id*).  The amended complaint further

7

alleges State Farm never investigated whether subrogation against the plaintiff was even possible.  (*Id.* at 22-23).

As to Nationwide, the amended complaint alleges the plaintiff's liability insurer's offer of her policy limits to Voss was insufficient in light of State Farm's foreseeable fronting maneuver.  (Doc. 27 at 27-28).  The plaintiff contends State Farm, with Nationwide's assistance, misused the *Lambert* fronting procedure to effectively strip her of liability protection.  (*Id.* at 30).  The amended complaint further alleges Nationwide and State Farm have agreed and conspired to never seek subrogation against each other's insureds, instead using the *Lambert* fronting procedure and the guise of protecting its subrogation interests to hide the existence of insurance from juries and force liability insurers to provide a *de minimis* defense to underinsured tortfeasors.  (*Id.* at 30-31).

## III.   DISCUSSION

Because this is a diversity action, Alabama substantive law governs.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Alabama's uninsured motorist statute, in order for an insured to be entitled to UIM benefits, the insured must be "legally entitled to recover" from the owner or driver of the underinsured vehicle. ALA. CODE § 32-7-23.  The Alabama Supreme Court has recognized the conflicting rights of UIM insureds and their insurers when handling UIM claims.  *Lowe v. Nationwide Ins. Co.*, 521 So. 2d 1309 (Ala. 1988).  Under *Lowe*, when an insured

sues a tortfeasor and also seeks UIM benefits, the insured may either join the UIM insurer as a party or simply notify the UIM insurer of the lawsuit against the tortfeasor and the possibility of a UIM claim following the trial. *Id.* at 1310. Where the insured names the UIM insurer in the lawsuit, the UIM insurer has the option to participate in the litigation or opt-out—choosing not to participate in the trial. *Id.* Where the insured does not name the UIM insurer in the lawsuit, the insurer can choose to intervene or stay out of the case. *Id.* Under any of these scenarios, the UIM insurer is bound by the liability and damages determinations at trial. *Id.*

In *Lambert*, the Alabama Supreme Court addressed the conflict between a UIM insurer's subrogation rights against the tortfeasor and the UIM insured's right to settle with the tortfeasor. The court held an insured cannot settle a claim against a tortfeasor absent the consent of the UIM insurer. 576 So. 2d at 167. The court also provided the following "general rules" regarding the procedure to be followed by UIM insureds and insurers:

> (1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.
>
> (2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify

the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.

(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.

(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.

(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor's insurer.

(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer.

*Id.* In *Lambert*, the court noted these guidelines were designed to protect the UIM

insurer in two ways: (1) protecting its subrogation rights against the tortfeasor; and

(2) guarding against possible collusion between the UIM insured and tortfeasor at the UIM insurer's expense. *Id.*

Having set out the general procedure where UIM claims are involved, the specific claims and applicable Alabama law are addressed in turn.

### A.   <u>Nationwide</u>

The amended complaint asserts the following claims against Nationwide individually: (1) negligent failure to settle; (2) wanton failure to settle; (3) bad faith failure to settle; and (4) breach of contract.   (Doc. 27 at 26-29, 31-32).   The tortious failure to settle claims are addressed first, followed by a discussion of the breach of contract claim.

### 1.   Tortious Failure to Settle

The Alabama Supreme Court recognized claims against insurers for negligent or bad faith failure to settle within policy limits in *Waters v. Am. Cas. Co. of Reading, Pa.*, 73 So. 2d 524, 528-531 (Ala. 1953).   The plaintiff in *Waters* owned a theater in which a patron was injured by a defective seat.   The patron and her husband separately sued the owner.   Prior to trial, the patrons offered to settle both lawsuits for the limits of the theater owner's liability policy.   The owner's insurer declined the settlement offer and both cases ultimately resulted in plaintiffs' verdicts exceeding the liability insurance coverage.   In recognizing a claim for tortious failure to settle, the court noted a liability insurer's "exclusive right" to

settle a claim against its insured created a duty to observe "ordinary diligence" in exercising settlement power.  *Id.* at 532.  Accordingly:

> when an opportunity is presented to the insurer to make a settlement of the claim in an amount not more than the limit of liability, the law raises a duty on his part to use ordinary care to ascertain the facts on which its performance depends if he has not already done so. If the insurer neglects to exercise ordinary diligence in ascertaining these facts, if he has not already done so, and as a proximate result of such neglect he fails to make such a settlement, which is available, and when such knowledge would have caused a reasonably prudent person to do so, and a verdict and judgment are rendered against insured in an amount more than the limit of liability in the policy, the insurer should be held liable to the insured for the full amount of the judgment.

*Id.* at 532-33.

Here, Nationwide's principal contention is that the plaintiff cannot state a claim for tortious failure to settle because it did attempt to settle Voss's claims against her but was thwarted by State Farm's invocation of the *Lambert* fronting procedure.  (Doc. 42 at 2-6).  Indeed, *Waters* arose from the insurer's refusal to resolve the claims against its insured by declining a settlement demand within its policy limits.  73 So. 2d at 531-32.  The other cases the plaintiff cites in support of her failure to settle claims against Nationwide arose in the same context.  (Doc. 40 at 4-10) (citing *Hartford Acc. & Indem. Co. v. Cosby*, 173 So. 2d 585, 592 (Ala. 1965) (liability insurer *failed to accept* settlement demand within policy limits); *State Farm Mut. Auto. Ins. Co. v. Hollis*, 554 So. 2d 387, 390-91 (Ala. 1989) ("A *decision not to settle* must be a thoroughly honest, intelligent and objective one.")

(alteration incorporated; emphasis added); *Carrier Express, Inc. v. Home Indem. Co.*, 860 F. Supp. 1465, (N.D. Ala. *entered* June 3, 1994) (*refusal to accept* policy limits settlement demand within time limit set by plaintiff); *Metlife Auto & Home Ins. Co. v. Reid*, No. 09-1762-CLS, 2013 WL 6844109 (N.D. Ala. *entered* Dec. 23, 2013) (*refusal* to accept settlement offer well below liability limits); *Franklin v. Nat'l Gen. Assurance Co.,* No. 13-103-WKW, 2015 WL 350633 (M.D. Ala. *entered* Jan. 23, 2015) (*refusal* of policy limits demand).

Here, the amended complaint does not allege Nationwide refused Voss's settlement demand.  Rather, the plaintiff alleges Nationwide promptly accepted Voss's policy limits settlement demand in exchange for the plaintiff's release of her from further liability.  As Nationwide contends, it is difficult to imagine how it could be held liable for failure to settle where the settlement it negotiated—including a full release for the plaintiff—was thwarted by a third-party, State Farm. In effect, the settlement with Voss was no longer "available" to Nationwide once State Farm refused to consent to it; moreover, the complaint cannot reasonably be read to allege Nationwide in any way caused the settlement to remain unexecuted. *Waters*, 73 So. 2d at 532.

In response to this argument, the plaintiff contends a liability insurer's duties are more expansive than offering policy limits.  The plaintiff points to four ways the amended complaint alleges Nationwide breached its duty of care: (1) failure to

seek or obtain a "*Taylor* release," under which Voss would have agreed to forego pursuit of any verdict exceeding the $125,000 combined limits of the plaintiff's liability coverage and Voss's UIM coverage; (2) failure to notify State Farm that, by refusing to consent to settlement and invoking the *Lambert* procedure, it had acquired a duty of good faith and fair dealing toward the plaintiff; (3) its pattern and practice of "hampering the ability" of defense counsel to defend and requiring counsel to provide "less of a defense" to its insured tortfeasors where UIM insurers front settlement funds; and (4) failure to warn the plaintiff of the possibility of an excess judgment.  (Doc. 40 at 10-15).

Before addressing these arguments, it must be noted the Alabama case law the plaintiff relies on to support imposing these additional duties on Nationwide arose where insurers defended their insureds under a reservation of rights.  (Doc. 40 at 5-15) (*citing Carrier Express* 860 F. Supp. 1465; *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987); *Reid*, No. 2013 WL 68544109).  Due to the obvious moral hazards, Alabama courts impose enhanced duties of good faith on an insurer defending its insured under a reservation of rights.  In Voss's suit against its insured, Nationwide defended the plaintiff without reservation.  Accordingly, the principles the plaintiff draws from the foregoing cases are inapplicable here, where Nationwide and the plaintiff's interests were aligned.  *Franklin,* 2015 WL 350633 at *16 n.18 (where insurer's

defense was without reservation, enhanced duties arising in *Carrier Express* and other reservation of rights cases were inapplicable).

Turning to the plaintiff's individual arguments, the *Taylor* release the plaintiff envisions sprang from a case in which the Supreme Court of Hawaii held a liability carrier can satisfy its duty to indemnify its underinsured tortfeasor by securing a release which protects its insured from an excess judgment while preserving the UIM carrier's subrogation rights. *Taylor v. Gov't Employees Ins. Co.*, 978 P.2d 740, 742-53 (Haw. 1999). The plaintiff contends Nationwide, rather than accepting Voss's policy limits settlement offer, should have conditioned any settlement on Voss's agreement to forego executing any judgment over $125,000— the total of combined liability and UIM benefits available. (Doc. 40 at 11-12). This argument is conclusory and speculative; it is difficult to imagine why Voss, who suffered permanent injuries and medical costs dwarfing the available insurance proceeds, would agree to forego the opportunity to pursue any judgment against the plaintiff. But more importantly, the plaintiff does not point to any case in which the Alabama Supreme Court—or any Alabama court—has required a liability insurer to condition a settlement offer on the victim's agreement to collect only to the extent of insurance coverage.[3]

---

[3] The plaintiff cites to *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 488-491 (Ala. 2002), for the Alabama Supreme Court's enforcement of an "extent of coverage"

Second, the plaintiff contends Nationwide should have warned State Farm that, by invoking *Lambert*, it acquired a duty of good faith and fair dealing to protect the plaintiff from a potential excess judgment.  (Doc. 40 at 12).   As discussed in Section III.B.1., *infra*, State Farm did not owe the plaintiff—who was not State Farm's insured—the types of duties she proposes.

Next, the plaintiff contends Nationwide provided subpar counsel or impeded counsel's ability to defend her.  The amended complaint's allegations in this regard are limited to the following:

> Nationwide had a pattern and practice of hampering the ability of the attorneys it hired/employed to represent underinsured tortfeasors (like Smith) when another insurer (like State Farm) fronted liability limits. Nationwide mandated its defense attorneys to provide less of a defense in a fronting scenario.

(Doc. 27 at 27-28).  These allegations are entirely vague and conclusory; they are also allegations of Nationwide's pattern and practice without any detail regarding how the plaintiff's counsel's performance was inadequate, much less how Nationwide acted to hinder defense counsel.   Accordingly, the amended complaint's general allegations regarding the defense counsel Nationwide provided are mere "labels and conclusions" and are entirely speculative.  *Twombly* 550 U.S. at 555.

---

release.  (Doc. 40 at 12).  However, the plaintiff cites—and the court is aware of—no Alabama case requiring or recommending an insurer to seek this type of release.

Fourth, the plaintiff contends Nationwide should have warned her about the danger of an excess judgment and claims the *Lambert* fronting procedure created a conflict of interest between herself and Nationwide.   (Doc. 40 at 13-14).   In arguing Alabama law requires a liability insurer a duty to warn its insured of the possibility of an excess judgment, the plaintiff cites exclusively to cases discussing the enhanced duties owed when insurers defend under a reservation of rights. (Doc. 40 at 14) (citing *L&S Roofing*, 521 So. 2d at 1303; *Carrier Express,* 860 F. Supp. at 1479-80).   As previously noted, the enhanced duty of good faith and fair dealing does not apply here.   *Franklin,* 2015 WL 350633 at *16 n.18.   Regarding the supposed conflict, the plaintiff points to the amended complaint's allegations that: (1) the lawyer Nationwide provided was a Nationwide employee; and (2) once State Farm fronted, Nationwide no longer had control over settling the case. (Doc. 40 at 14).   Neither allegation shows a conflict of interest between the plaintiff and Nationwide; settlement or a defense verdict remained in both parties' best interests.

In short, Nationwide cannot be liable for tortious failure to settle because it did not refuse a settlement demand within its policy limits.   As alleged in the amended complaint, Nationwide promptly accepted Voss's demand in exchange for the plaintiff's full release.   That this settlement did not come to fruition because of State Farm's refusal to consent does not expose Nationwide to liability.   Neither are

the additional duties the plaintiff proposes supported by Alabama law under the facts alleged in the amended complaint.  Indeed, the additional duties the plaintiff seeks to impose on Nationwide would require this court to apply the enhanced duty of good faith and fair dealing to an insurer which defended its insured without reservation.  This court concludes the Alabama Supreme Court would not apply the enhanced duty of good faith and fair dealing under the facts alleged here.

For the foregoing reasons, the claims for tortious failure to settle against Nationwide (Counts 5-7) are due to be dismissed for failure to state a claim.

### 2.    Breach of Contract

The amended complaint alleges the liability insurance contract imposed duties of good faith and fair dealing on Nationwide, which Nationwide breached. (Doc. 27 at 32).  Regarding the breaches, the amended complaint points to the same allegations the plaintiff uses to support Nationwide's tortious failure to settle: (1) failure to seek a *Taylor* release; (2) failure to notify State Farm of supposed duties it owed the plaintiff; (3) provision of deficient counsel; and (4) failure to warn the plaintiff about her predicament.  (*Id.* at 27-28).  As noted above, Alabama law does not impose these supposed duties on liability insurers under the circumstances alleged here.

More importantly, the amended complaint alleges Nationwide attempted to accept Voss's policy limits demand in exchange for a full release of the plaintiff.

18

When State Farm's invocation of *Lambert* prevented the consummation of the settlement, Nationwide defended the plaintiff.   When the trial court entered judgment against the plaintiff in favor of Voss, Nationwide paid the plaintiff's policy limits.  Accordingly, accepting the facts in the amended complaint as true, Nationwide fulfilled its contractual allegations to the plaintiff.

For the foregoing reasons, the plaintiff's claim for breach of contract against Nationwide (Count 10) is due to be dismissed for failure to state a claim.

## B.   **State Farm**

The amended complaint asserts claims for negligent, wanton, and bad faith failure to settle, as well as a claim for abuse of process, against State Farm.  (Doc. 27 at 3-26).  At oral argument, the plaintiff conceded her claim for bad faith failure to settle; that claim (Count 3) will be dismissed without further discussion.  (Doc. 44 at 81-82).   The remaining tortious failure to settle claims are addressed first, followed by the abuse of process claim.

### 1.     **Negligent and/or Wanton Failure to Settle**

The Alabama Supreme Court has recognized claims for negligent failure to settle in the context of first-party insurance claims.  *E.g. Waters*, 73 So. 2d 524; *Hollis*, 554 So. 2d 387.  In its motion to dismiss, State Farm argues the plaintiff's claims for refusing to settle fail as a matter of law because the plaintiff was not a State Farm insured and the amended complaint depends on imposing duties only

applicable in the first-party insurance setting. (Doc. 33 at 8-9). Specifically, State Farm contends: (1) it did not assume any duties to Smith by protecting its subrogation rights; and (2) to the extent the plaintiff bases State Farm's liability on allegations regarding its handling of Voss's UIM claim, Alabama law does not recognize claims for negligent or wanton claim handling. (*Id.* at 9-13). In response, the plaintiff does not point to any Alabama law imposing duties on UIM carriers to third-party tortfeasors;[4] instead she argues State Farm's duties arise under two interrelated principles: (1) the undertaking doctrine; and (2) the foreseeability of the plaintiff's excess judgment. (Doc. 40 at 33-46). Each theory is discussed in turn.

Regarding the undertaking doctrine, the plaintiff argues that by choosing to thwart the plaintiff's settlement with Voss, State Farm assumed a duty to the plaintiff under general principals of Alabama tort law. (Doc. 40 at 33-34). The plaintiff further contends the extent of State Farm's duties should be determined by insurance industry expert testimony. (*Id.* at 34). The plaintiff also notes she had relinquished control of her legal defense to Nationwide. (*Id.* at 35-36). As the plaintiff would have it, because State Farm prevented her from consummating the settlement with Voss—which would have released the plaintiff from further

---

[4] Indeed, the plaintiff notes there is no Alabama law precisely on point. (Doc. 40 at 35, 39).

liability and the risk of an excess judgement—State Farm assumed the same duties applicable in the first-party insurance context.  (*Id.* at 36-37).

Regarding the foreseeability doctrine, the plaintiff relies on the general duty of care under Alabama law: "every person owes every other person a duty imposed by law to be careful not to hurt him."  (Doc. 40 at 39) (quoting *Taylor v. Smith*, 892 So. 2d 887, 893 (Ala. 2004)).  The plaintiff notes the key factor in finding a duty of care is the foreseeability of harm and points to cases in which courts applying Alabama law found a duty to seemingly unrelated third-parties.  (*Id.* at 39-41) (citing *Taylor*, 892 So. 2d 887 (physician administering methadone to patient who used illicit drugs owed a duty to third-party driver injured in vehicle accident with the intoxicated patient); *Kelly v. M. Trigg Enter.*, 605 So. 2d 1185, 1190 (Ala. 1992) (retailer who sold pure ethyl chloride air-freshener to minor—who in turn inhaled it as a "popper" and drove under its influence—owed duty to third-party driver injured when minor caused accident); *Bobo v. Tenn. Valley Auth.*, 855 F.3d 1294, 1304-07 (11th Cir. 2017) (employer had duty to protect foreseeable third-party plaintiffs from take-home asbestos exposure)).

Here, because Voss's medical damages were more than twenty times greater than the plaintiff's liability limits, the plaintiff is correct that the danger of an excess verdict was foreseeable.  Because of the *Lambert* procedures and State Farm's rejection of the proposed settlement with Voss, State Farm held the ultimate

power to settle the case or force it to trial.  Accordingly, the plaintiff claims State Farm had the duty to investigate whether its subrogation interest had any value before preserving its subrogation rights under *Lambert*.  (Doc. 40 at 42).  The plaintiff describes this as a "hybrid" duty to tortfeasors requiring a UIM insurer to "make a good faith determination of whether its 'subrogation claim' has any real monetary value."  (*Id.* at 44).  If the subrogation claim is worthless, the UIM insurer would owe a duty to the tortfeasor to abstain from invoking the *Lambert* fronting process.  (*Id.* at 44-45).  If subrogation is possible, the UIM insurer would have a duty to accept a settlement between its insured and the tortfeasor that would protect the actual collectable subrogation interest, but no more.  (*Id.* at 45).  The plaintiff proposes this new hybrid duty could be enforced through any of the claims asserted here: negligent, wanton, or bad faith failure to settle.

The plaintiff's arguments suffer from several flaws.  As noted in State Farm's reply, the purpose of UIM insurance is to compensate a victim (like Voss) injured by a tortfeasor (like the plaintiff) with insufficient liability insurance to make the victim whole.  *Gulf Am. Fire & Cas. Co. v. Gowan*, 218 So. 2d 688, 691 (Ala. 1969); ALA. CODE § 32-7-23.  UIM insurance is not meant to protect the underinsured third-party tortfeasor from excess judgments resulting from their tortious conduct or decisions regarding the amount of liability coverage to buy. Neither is the fronting procedure set forth in *Lambert* concerned with protecting an

underinsured tortfeasor from an excess judgment.  Instead, *Lambert* addresses the competing rights of UIM insurers' subrogation interests and their UIM insureds' right to settle with a tortfeasor.  576 So. 2d at 167.  In setting out the fronting process in *Lambert*, the Alabama Supreme Court specifically noted it aimed to maintain UIM insurers' subrogation rights and protect against any collusion between UIM insureds and tortfeasors.  *Id.*; *See Ex parte State Farm Mut. Auto. Ins. Co.*, 207 So. 3d 734, 736 (Ala. 2016).  Absent from this analysis is any concern regarding a third-party underinsured tortfeasor's finances.

The factual scenarios in the cases the plaintiff cites reinforce the conclusion that neither the presence of UIM insurance nor the *Lambert* fronting procedure supports a duty on the part of a UIM insurer to a third-party tortfeasor.  (Doc. 40 at 39-41).  The third-parties to whom duties were owed in *Taylor*, *Kelly*, and *Bobo*, *supra*, were hapless souls struck by impaired drivers or unwittingly exposed to asbestos carried home by others.  These third-parties did nothing to cause their injuries and could not have mitigated the unknown risks they faced.  Here, the amended complaint admits the plaintiff was speeding, talking on her cell phone, and driving on the wrong side of the road when her vehicle struck Voss.  The plaintiff further alleges her liability was clear and her case was indefensible. Unlike the unlucky victims in the cases cited by the plaintiff, the cause of the plaintiff's damages (the excess judgment) was her own, admitted tortious conduct.

The plaintiff's decision to carry the minimum liability coverage allowed by law increased her exposure.

The amended complaint and response to the motion to dismiss skillfully articulate the difficult position in which the plaintiff found herself after State Farm rejected her proposed settlement with Voss.  However, the plaintiff's proposed remedy (the "hybrid duty") invites this court to rewrite well-established Alabama law regarding the duties UIM insurers owe to third-party members of the general population.  This *Erie*-bound court will not will not impose on Alabama UIM insurers novel third-party duties, no matter how compellingly argued.  If the new duties the plaintiff proposes are to come to fruition, they must flow from the appropriate source: the legislature or the Alabama Supreme Court.  *Weaver v. G.D. Searle & Co.*, 558 F. Supp. 720, 724 (N.D. Ala. 1983).

Absent the imposition of a new duty on State Farm to the plaintiff, all that remains of her claims regarding State Farm's failure to settle stems from State Farm's alleged failure to investigate Voss's UIM claim.  There is no need to guess how the Alabama Supreme Court would rule on claims derived from State Farm's alleged negligent or wanton claim handling; it has repeatedly refused to recognize these claims.  *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995) (citing *Pate v. Rollison Logging Equip., Inc.,* 628 So. 2d 337 (Ala. 1993); *Armstrong v. Life Ins. Co. of Va.,* 454 So. 2d 1377, 1380 (Ala. 1984), *overruled on other*

*grounds, Hickox v. Stover,* 551 So. 2d 259, 264 (Ala. 1989); *Chavers v. Nat'l Sec. Fire & Cas. Co.,* 405 So. 2d 1 (Ala. 1981); *Calvert Fire Ins. Co. v. Green,* 180 So. 2d 269 (Ala. 1965)).

For the foregoing reasons, the plaintiff's claims for bad faith, wanton failure to settle, and negligent failure to settle against State Farm (Counts 1-3) are due to be dismissed for failure to state a claim under Alabama law.

### 2.   Abuse of Process

A claim for abuse of process under Alabama law requires: (1) wrongful use of judicial process; (2) the existence of an ulterior motive; and (3) malice. *Triple J. Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993).  In its motion to dismiss, State Farm contends the *Lambert* fronting procedure is not the sort of process giving rise to a claim for abuse of process.  (Doc. 33 at 14).  State Farm also contends tort liability for abuse of process is inapplicable because it has neither initiated nor participated in any litigation involving the plaintiff.  (Doc. 43 at 8).

The parties cannot point to any Alabama cases specifically addressing whether invocation of the *Lambert* fronting procedure can qualify as judicial process giving rise to tort liability.  The plaintiff points to a secondary source Alabama courts have cited in analyzing other contours of abuse of process claims, which notes: "the term 'process,' as used in the tort of abuse of process, is

interpreted broadly and encompasses the entire range of activities and procedures incident to the litigation process, including discovery proceedings, noticing of depositions, and issuing of subpoenas."   1 Am. Jur. 2d *Abuse of Process* § 2 (footnotes omitted); (*see* Doc. 40 at 25).   However, the following sentence in the treatise notes other courts have found "'process' refers to the papers issued by a court to bring a party or property within its jurisdiction, such as a writ of attachment, the process used to initiate a civil action, or the process related to the bringing of criminal charges."   1 Am. Jur. 2d *Abuse of Process* § 2.   More importantly, the Eleventh Circuit has explicitly held "[i]n Alabama, an abuse of process claim is proper only when the action results in the issuance of some form of special process from the court, such as a writ of garnishment." *Ramsey v. Leath*, 706 F.2d 1166, 1169 (11th Cir. 1983); *see id.* at 1170.

Courts sitting in this district have concluded a plaintiff claiming abuse of process "must allege 'that a suit had been legally filed for a proper purpose,' but once filed, 'the process of the court . . . had been improperly used.'"   *Shuler v. Duke*, No. 16-0501-VEH, 2018 WL 2445685, at *10 (N.D. Ala. *entered* May 31, 2018) (quoting *Ancora Corporation v. Stein*, 445 F.2d 431, 433 (5th Cir. 1971)); *Ray v. Calhoun Cty.*, No. 1:13-CV-1860-VEH, 2017 WL 4572290, at *6 (N.D. Ala. *entered* Oct. 13, 2017) (dismissing abuse of process claim where plaintiff alleged wrongful initiation of criminal charges, not any subsequent improperly

issued special process).  Moreover, courts in this district have repeatedly dismissed abuse of process claims concerning conduct that occurred prior to initiation of legal proceedings.  *Rondini v. Bunn*, No. 17-1114-RDP, 2018 WL 317713, at *10 (N.D. Ala. *entered* Jan. 8, 2018) (dismissing abuse of process claim based on conduct that occurred prior to initiation of threatened criminal proceedings.); *Union Ins. Co. v. Blakeney Palmer Co.*, No. 12-4072-RDP, 2014 WL 12597416, at *2 (N.D. Ala. *entered* Apr. 17, 2014) ("[t]he key to a claim of abuse of process is a wrongful act on the part of [the plaintiff] after she filed the declaratory judgment action.") (emphasis added) (quoting *Kizer v. Finch*, 730 So. 2d 1197, 1200 (Ala. Civ. App. 1998)); *see Ray*, 2017 WL 4572290, at *6.

Following the foregoing authority, the timing of events alleged here dooms the plaintiff's abuse of process claim.  The only affirmative action State Farm took was its decision to invoke the *Lambert* fronting procedure.  This decision occurred before Voss filed the lawsuit against the plaintiff.  Additionally, the plaintiff does not allege State Farm's decision resulted in any special process being issued against her.  These deficiencies foreclose the plaintiff's abuse of process claim.  Moreover, the amended complaint plainly alleges State Farm did not initiate or participate in any legal proceedings against the plaintiff.

For the foregoing reasons, the plaintiff's claim for abuse of process against State Farm (Count 4) is due to be dismissed for failure to state a claim under Alabama law.

### C.   Claims Against Both State Farm and Nationwide

Finally, the amended complaint asserts claims for outrage and civil conspiracy against both defendants.  Each claim is addressed in turn.

### 1.   Outrage

The amended complaint alleges State Farm and Nationwide purposefully misused the fronting procedure to strip the plaintiff of liability protection, gambling with her financial future in hopes of an unlikely defense verdict.  (Doc. 27 at 30).  The complaint also contends State Farm and Nationwide have an agreement to never subrogate against each other's insureds.  (*Id.*).  Accordingly, the complaint asserts the *Lambert* fronting procedure has evolved into a process which allows liability insurers to present a *de minimis* defense, allows UIM insurers to avoid the cost of litigation, and places an inordinate amount of risk on underinsured tortfeasors.  (*Id.*).  The plaintiff also claims the defendants' conduct caused her "emotional distress so severe that no reasonable person could be expected to endure it."  (*Id.*).  While not specifically pled in the portion of the complaint alleging outrage, other portions of the complaint describe the plaintiff's "mental anguish, stress, annoyance, worry, and embarrassment" as a result of: (1)

being sued for damages far exceeding her liability coverage; (2) enduring discovery and trial; and (3) being subject to an $1,900,000 judgment and liable for the amount exceeding available insurance proceeds. (*Id.* at 18).

A plaintiff pleading outrage must allege the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). The conduct complained of must "be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

Even assuming the defendants' alleged activities were sufficiently egregious to constitute outrageous conduct, the plaintiff cannot show her emotional distress was so severe that no reasonable person could be expected to endure it. *Standridge*, 565 So. 2d at 44. The plaintiff's amended complaint acknowledges she: (1) was speeding; (2) was talking on her cell phone; (3) crossed the centerline; and (4) struck Voss, who was riding his bicycle in the oncoming lane. The plaintiff also alleges her liability was clear and her case was indefensible. As a result of the accident, Voss suffered life-threatening injuries, was comatose for weeks, spent months receiving inpatient care, and underwent multiple brain surgeries. Voss incurred over $725,000 in medical expenses and suffers from

permanent brain damage as a result of the accident.   An otherwise reasonable person engaging in the conduct to which the plaintiff admits could—and probably *should*—expect to endure the emotional distress associated with being sued and subjected to discovery and trial.   A reasonable person with minimal liability coverage could—and probably *should*—also expect to endure the emotional distress associated with being pursued for damages exceeding her insurance limits and being subject to a large excess judgment.

For the foregoing reasons, the plaintiff's claim for outrage against the defendants (Count 8) is due to be dismissed for failure to state a claim under Alabama law.

### 2.    Civil Conspiracy

The Alabama Supreme Court has held "[l]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy."   *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1124 (Ala. 2003).   Because all of the plaintiff's substantive claims are due to be dismissed, the claim for civil conspiracy (Count 9) is due be dismissed for failure to state a claim under Alabama law.

## IV.    CONCLUSION

For all of the foregoing reasons, the defendants' motions to dismiss (Docs. 32, 33) are due to be granted in their entirety, and all of the claims presented in the amended complaint are due to be dismissed for failure to state a claim.

A separate order will be entered.

**DONE** this 27th day of September, 2018.


STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE